UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SEAN C. McCONNELL,<br><br>            Plaintiff,<br><br>     v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social<br>Security,<br><br>            Defendant. | ) Case No. EDCV 08-667 JC<br>)<br>)<br>) MEMORANDUM OPINION<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**I.    SUMMARY**

On May 23, 2008, plaintiff Sean McConnell ("plaintiff") filed a Complaint seeking review of the Commissioner of Social Security's denial of plaintiff's application for benefits. The parties have filed a consent to proceed before a United States Magistrate Judge.

This matter is before the Court on the parties' cross motions for summary judgment, respectively ("Plaintiff's Motion") and ("Defendant's Motion"). The Court has taken both motions under submission without oral argument. See Fed. R. Civ. P. 78; L.R. 7-15; June 2, 2008 Case Management Order ¶ 5.

///

Based on the record as a whole and the applicable law, the decision of the Commissioner is AFFIRMED. The findings of the Administrative Law Judge ("ALJ") are supported by substantial evidence and are free from material error.[1]

## II. BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION

On April 15, 2005, plaintiff filed an application for Supplemental Security Income benefits. (Administrative Record ("AR") 10, 52, 57). Plaintiff asserted that he became disabled on May 27, 2004, due to constant pain and partial use of his hand. (AR 52, 62). The ALJ examined the medical record and heard testimony from plaintiff (who was represented by counsel) and a vocational expert on February 5, 2007. (AR 321-37). At a supplemental hearing on August 6, 2007, the ALJ heard further testimony from plaintiff, and ordered a consultative neurological examination of plaintiff. (AR 338-46). At a supplemental hearing on February 6, 2008, the ALJ heard testimony from a different vocational expert. (AR 347-54).

On March 10, 2008, the ALJ determined that plaintiff was not disabled through the date of the decision. (AR 16). Specifically, the ALJ found: (1) plaintiff suffered from the following severe impairments: Nerve and tendon injury of the right arm with residual pain (AR 12); (2) plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments (AR 12); (3) plaintiff could perform light work[2] (AR 12);

---

[1]The harmless error rule applies to the review of administrative decisions regarding disability. See Batson v. Commissioner of Social Security Administration, 359 F.3d 1190, 1196 (9th Cir. 2004) (applying harmless error standard); see also Stout v. Commissioner, Social Security Administration, 454 F.3d 1050, 1054-56 (9th Cir. 2006) (discussing contours of application of harmless error standard in social security cases).

[2]Specifically, the ALJ determined that plaintiff (i) could lift and carry 20 pounds occasionally and 10 pounds frequently; (ii) could stand and/or walk eight hours out of an eight-hour work day; (iii) could sit for eight hours in an eight-hour work day for two hours at a time;
(continued...)

(4) plaintiff has no past relevant work (AR 15); (5) there are jobs that exist in significant numbers in the national economy that plaintiff could perform (AR 15-16); and (6) plaintiff's allegations regarding his limitations were not credible to the extent they were inconsistent with the ALJ's residual functional capacity assessment (AR 14).

The Appeals Council denied plaintiff's application for review.  (AR 3-5).

### III.  APPLICABLE LEGAL STANDARDS

#### A.  Sequential Evaluation Process

To qualify for disability benefits, a claimant must show that he is unable to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least twelve months.  Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (citing 42 U.S.C. § 423(d)(1)(A)).  The impairment must render the claimant incapable of performing the work he previously performed and incapable of performing any other substantial gainful employment that exists in the national economy.  Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

In assessing whether a claimant is disabled, an ALJ is to follow a five-step sequential evaluation process:

(1)  Is the claimant presently engaged in substantial gainful activity?  If so, the claimant is not disabled.  If not, proceed to step two.

///
///

---

[2](...continued)
(iv) could occasionally reach overhead and in all directions with the right hand; (v) was precluded from handling, fingering, feeling, pushing or pulling with the right hand; and (vi) could frequently reach overhead, in all directions, and handle, finger, feel, push and pull with the left hand.  (AR 12-13).

|   |     |   |
|---|-----|---|
| (2) | Is the claimant's alleged impairment sufficiently severe to limit his ability to work? If not, the claimant is not disabled. If so, proceed to step three. |
| (3) | Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, the claimant is disabled. If not, proceed to step four. |
| (4) | Does the claimant possess the residual functional capacity to perform his past relevant work? If so, the claimant is not disabled. If not, proceed to step five. |
| (5) | Does the claimant's residual functional capacity, when considered with the claimant's age, education, and work experience, allow him to adjust to other work that exists in significant numbers in the national economy? If so, the claimant is not disabled. If not, the claimant is disabled. |

Stout v. Commissioner, Social Security Administration, 454 F.3d 1050, 1052 (9th Cir. 2006) (citing 20 C.F.R. §§ 404.1520, 416.920).

The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five. Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001) (citing Tackett); see also Burch, 400 F.3d at 679 (claimant carries initial burden of proving disability).

**B.    Standard of Review**

Pursuant to 42 U.S.C. section 405(g), a court may set aside a denial of benefits only if it is not supported by substantial evidence or if it is based on legal error. Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir. 2006) (citing Flaten v. Secretary of Health & Human Services, 44 F.3d 1453, 1457 (9th Cir. 1995)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales,

402 U.S. 389, 401 (1971) (citations and quotations omitted).  It is more than a mere scintilla but less than a preponderance.  Robbins, 466 F.3d at 882 (citing Young v. Sullivan, 911 F.2d 180, 183 (9th Cir. 1990)).

      To determine whether substantial evidence supports a finding, a court must "'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'"  Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (quoting Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993)).  If the evidence can reasonably support either affirming or reversing the ALJ's conclusion, a court may not substitute its judgment for that of the ALJ.  Robbins, 466 F.3d at 882 (citing Flaten, 44 F.3d at 1457).

## IV.   DISCUSSION

### A.   The ALJ Properly Considered Testimony From a Second Vocational Expert

#### 1.   Pertinent Facts

At the February 5, 2007, hearing, the ALJ posed the following hypothetical question to a vocational expert ("VE #1"):

> Assuming that we have an 18 year old adult with no past relevant work experience. . . . [¶][¶] Eleven years of education with some college units.  And that person has the following residual functional capacity, can lift occasionally 20 pounds, frequently ten pounds.  Can stand and walk six plus six hours sitting out of an eight hour day with no difficulty.  Push and pull with the left upper extremity and both lower extremities only.  The lifting will be primarily left upper extremities.  The right for balancing some objects but not lifting.  No ladders, ropes or scaffolds.  Occasional climbing, balancing, stooping, kneeling, crouching and crawling.  The person should not be doing any reaching either overhead or even at shoulder length, shoulder height with the right upper extremity.  That also

    limits the right upper extremity to no handling or gross manipulation,
no fingering and no feeling.

(AR 333-34).

    VE #1 testified that there were no jobs available in the national economy for such a person.[3] (AR 334). At the end of the hearing, the ALJ held the record open so plaintiff could provide additional medical records pertaining to plaintiff's right arm. (AR 324, 335-36).

    At the August 6, 2007 supplemental hearing, the ALJ noted that subpoenaed medical records had not yet been received, that the record of plaintiff's physical therapy was incomplete, and that the record lacked current medical opinions regarding plaintiff's abilities. (AR 340-41). The ALJ also stated that he had "no faith" in the testimony from VE #1 that there were no jobs available for a person like plaintiff who has little or no use of one arm. (AR 343). Consequently, the ALJ ordered a consultative neurological examination of plaintiff. (AR 343, 345-46).

---

[3] When the ALJ asked VE #1 to explain her findings, the following exchange ensued:
    [VE #1] Considering that the gentleman was right-hand dominant, initially, there would be a [] few positions available that actually [sic] high school, such as a surveillance system monitor. Those numbers are not available for someone that does not have a high school diploma.
    [ALJ] Is that the only position that would be available?
    [VE #1] Well, I considered usher. However, ushers, and I did some research on this over the last couple years for my own casework, ushers actually empty trash. Or I was considering ticket taker. But - -
    [ALJ] . . . I'm kind of astonished because I know semi-truck drivers that have no right arm and they drive trucks and they still get a license. I know a police officer that has no right arm, that is a police officer. Fully certified and works every day.
    [VE #1] And I, and I too, I had a one-armed gentleman on my caseload [who] was required special accommodations to actually fit the truck. I had a client that worked at a truck stop in Barstow with one arm, but that was with special accommodations.
    [ALJ] Okay.
(AR 334-35).

At the February 6, 2008 supplemental hearing, the ALJ posed the following hypothetical question to a different vocational expert ("VE #2"):

> I want you to assume [an] . . . 18-year-old individual with an eleventh grade, I believe twelfth grade by now, education. That person has the following limitations[:] Can frequently lift up to 10 pounds, occasionally up to 20 pounds; can carry the same amount of weight that I just gave you. That person can sit up to two hours at a time, but eight hours maximum in a day; there is no limitation of him standing or walking. With the right hand that person can reach only occasionally overhead and in all directions, but cannot handle, finger, feel, or push and pull with the right upper extremity or hand; the left hand is frequent use in all areas, reaching[,] handling, fingering, feeling, pushing and pulling; push and pull is within the weight limits I gave you. Can occasionally climb ladders and scaffolds, but frequently can do other climbing, balancing, stooping, kneeling, crouching, and crawling. Can work at unprotected heights on a frequent basis and around moving mechanical parts, as well as operating a motor vehicle. Frequently can work with humidity and wetness changes. I see nothing in the record to support any limitations on dust, odors, fumes, or pulmonary irritants. Can occasionally be exposed to extreme cold, but frequently in extreme heat, and occasionally can be exposed to vibrations. Would there be jobs for that individual?

(AR 350-51).

VE #2 testified that such an individual could work as a host in a restaurant or dance hall and as an usher. (AR 351-52). VE #2 testified that the number of usher jobs available needed to be discounted by 50 percent to account for plaintiff's right-hand limitation, stating the following reasons: "The statistics that

I have lump [the usher] position with lobby attendants and ticket takers. And with the right-handed limitation, lobby attendants and ticket takers would be precluded because [plaintiff] wouldn't have that bilateral function." (AR 352). VE #2 testified that plaintiff (who was originally right-handed) could also work as an information clerk since he had learned to write with his left hand. (AR 353-54).

### 2. Analysis

Plaintiff contends that the ALJ improperly sought testimony from a second vocational expert in order to justify a finding that plaintiff was not disabled. (Plaintiff's Motion at 3, 4). Plaintiff is not entitled to a reversal or remand based upon this contention.

First, plaintiff provides no evidence to support his argument that the ALJ sought testimony from a second vocational expert merely because the ALJ was "dissatisfied" with the testimony VE #1 provided at the February 5, 2007 hearing. (Plaintiff's Motion at 3). To the contrary, the transcript of the August 6, 2007 supplemental hearing reflects that the ALJ reasonably considered the record inadequate to allow for proper evaluation of the evidence, and thus appropriately held the record open so plaintiff could provide additional medical evidence, and so a consultative neurological examination could be conducted. (AR 340-41, 343, 345-46). While the ALJ was openly skeptical regarding VE#1's testimony, there is no evidence that the use of a different vocational expert at the August 6 hearing was anything other than a "consequence of the continued hearing." (Defendant's Motion at 4). Plaintiff cites no legal authority that prohibits an ALJ from seeking additional vocational expert testimony at a supplemental hearing after the record has been adequately developed.

Second, to the extent plaintiff suggests that the ALJ was biased, such a contention is unsupported. ALJs and similar administrative adjudicators are presumed to exercise their decision-making authority with honesty and integrity. See Schweiker v. McClure, 456 U.S. 188, 195-196 (1982); Withrow v. Larkin, 421

U.S. 35, 47 (1975); Rollins v. Massanari, 261 F.3d 853, 857-58 (9th Cir.2001) (citing Verduzco v. Apfel, 188 F.3d 1087, 1089 (9th Cir. 1999)).  To rebut such a presumption, the plaintiff has the burden to show that the ALJ's conduct, in the context of the whole case, was  "so extreme as to display clear inability to render fair judgment."  Rollins, 261 F.3d at 858 (internal quotation marks omitted) (quoting Liteky v. United States, 510 U.S. 540, 551 (1994)); Verduzco, 188 F.3d at 1089 (citation and internal quotation marks omitted) ("This presumption can be rebutted by a showing of conflict of interest or some other specific reason for disqualification.").  Plaintiff's unsupported allegation that the ALJ was vocational expert "shopping" does not come close to meeting his high burden in establishing bias.

Accordingly, a reversal or remand on this basis is not warranted.

**B.   The ALJ Properly Concluded That Plaintiff Could Perform Other Work That Exists in Significant Numbers in the National Economy**

Plaintiff contends that the ALJ's step five determination is erroneous and warrants a reversal or remand.  While this Court agrees that the ALJ incorrectly adopted what he mischaracterized as VE#2's testimony that plaintiff could work as a lobby attendant or ticket taker, the Court finds no material error in the ALJ's step five determination as the ALJ's determination that plaintiff could perform other jobs that exist in significant numbers in the national economy – namely, host at a restaurant or dance hall, or information clerk – is free from material error and supported by substantial evidence.

**1.   Background**

As noted above, VE#2 testified that plaintiff (or a hypothetical person with plaintiff's characteristics) could work as a host in a restaurant or dance hall (55,000 California positions; 385,000 national positions), as an usher (8,000 California positions; 56,000 national positions), and as an information clerk

(10,000 California positions; 99,000 national positions). (AR 351-52, 353-54). In discussing the number of such available jobs, VE #2 noted that the statistics he had regarding the number of usher jobs lumped such job with that of lobby attendants and ticket takers – jobs which plaintiff could *not* do because of his right hand limitations. (AR 352). Because of the foregoing, VE#2 indicated that the statistics above regarding usher positions incorporated a 50% erosion from the larger combined figure reflecting the number of positions for ushers, lobby attendants and ticket takers. (AR 352). VE#2 indicated that his testimony was consistent with the Dictionary of Occupational Titles ("DOT").

In his decision, the ALJ indicated that VE#2 had testified that a hypothetical individual with plaintiff's residual functional capacity could work as a host for a restaurant or dance hall, as an usher (lobby assistant or ticket taker), and as an information clerk, and recited the above-referenced statistics regarding the number of positions. (AR 16). Based expressly on VE#2's testimony, the ALJ concluded that plaintiff could perform work that exists in significant numbers in the national economy. (AR 16).

### 2. Pertinent Law

As noted above, at step five, the Commissioner must show that a claimant can perform some other work that exists in "significant numbers" in the national economy (whether in the region where such individual lives or in several regions of the country), taking into account the claimant's residual functional capacity, age, education, and work experience. Tackett, 180 F.3d at 1100 (citation omitted); 42 U.S.C. § 423(d)(2)(A). The Commissioner may satisfy this burden, depending upon the circumstances, by the testimony of a vocational expert or by reference to the Medical-Vocational Guidelines appearing in 20 C.F.R. Part 404, Subpart P, Appendix 2 (commonly known as "the Grids"). Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001) (citing Tackett, 180 F.3d at 1100-1101).

///

The vocational expert's testimony may constitute substantial evidence of a claimant's ability to perform work which exists in significant numbers in the national economy when the ALJ poses a hypothetical question that accurately describes all of the limitations and restrictions of the claimant that are supported by the record. See Tackett, 180 F.3d at 1101; see also Robbins, 466 F.3d at 886 (finding material error where the ALJ posed an incomplete hypothetical question to the vocational expert which ignored improperly-disregarded testimony suggesting greater limitations); Lewis v. Apfel, 236 F.3d 503, 517 (9th Cir. 2001) ("If the record does not support the assumptions in the hypothetical, the vocational expert's opinion has no evidentiary value.").

ALJs routinely rely on the DOT "in determining the skill level of a claimant's past work, and in evaluating whether the claimant is able to perform other work in the national economy." Terry v. Sullivan, 903 F.2d 1273, 1276 (9th Cir. 1990) (citations omitted). The DOT is the presumptive authority on job classifications. Johnson v. Shalala, 60 F.3d 1428, 1435 (9th Cir. 1995). An ALJ may not rely on a vocational expert's testimony regarding the requirements of a particular job without first inquiring whether the testimony conflicts with the DOT, and if so, the reasons therefor. Massachi v. Astrue, 486 F.3d 1149, 1152-53 (9th Cir. 2007) (citing Social Security Ruling 00-4p).[4] In order for an ALJ to accept vocational expert testimony that contradicts the DOT, the record must contain "persuasive evidence to support the deviation." Pinto v. Massanari, 249 F.3d 840, 846 (9th Cir. 2001) (quoting Johnson, 60 F.3d at 1435). Evidence sufficient to permit such a deviation may be either specific findings of fact regarding the claimant's residual functionality, or inferences drawn from the

///

---

[4] Social Security rulings are binding on the Administration. See Terry v. Sullivan, 903 F.2d 1273, 1275 n.1 (9th Cir. 1990). Such rulings reflect the official interpretation of the Social Security Administration and are entitled to some deference as long as they are consistent with the Social Security Act and regulations. Massachi, 486 F.3d at 1152 n.6.

context of the expert's testimony.  <u>Light v. Social Security Administration</u>, 119 F.3d 789, 793 (9th Cir.), <u>as</u> <u>amended</u> (1997) (citations omitted).

### 3. Analysis

Plaintiff contends that the ALJ's determination at step five that plaintiff could perform the jobs of host, ticket taker, and information clerk, is erroneous because the requirements of each such job exceed plaintiff's abilities.  (Plaintiff's Motion at 4-6).  As plaintiff notes, the DOT states that the positions of Host and Ticket Taker require frequent reaching and handling and occasional fingering, and the position of Information Clerk requires occasional reaching and handling.  (Plaintiff's Motion at 5) (citing DOT §§ 310.137-010 [Host/Hostess, Restaurant]; 349.667-010 [Host/Hostess, Dance Hall]; 344.667-010 [Ticket Taker]; 237.367-022 [Information Clerk]).  Plaintiff argues that such requirements exceed his abilities because, as the ALJ noted in determining residual functional capacity, plaintiff is limited "to only occasionally reach overhead and in all directions with the right hand" and "precluded from handling, fingering, feeling, pushing or pulling with the right hand."  (Plaintiff's Motion at 5).

With respect to the job of ticket taker, the Court finds the ALJ's determination that plaintiff could perform such job unsupported by substantial evidence.  VE#2 expressly excluded such job from his opinion because it required "bilateral function" which the hypothetical claimant did not possess.  (AR 352).  Nonetheless, the ALJ's error is harmless since, as discussed below, the ALJ determined plaintiff could perform other jobs identified by the vocational expert.

With respect to the positions of host and information clerk, the ALJ's step five determination that plaintiff could perform such jobs is supported by substantial evidence.  The Court finds no actual conflict between plaintiff's abilities and the DOT requirements identified for such jobs.  While the two challenged jobs do require, *inter alia*, frequent or occasional reaching, handling and/or fingering, plaintiff has no significant limitations in the use of his left arm

12

and hand, and thus would be capable of performing such requirements. The vocational expert confirmed as much when he testified that such jobs could be performed consistent with DOT requirements in spite of plaintiff's right arm limitations. (AR 352).

Plaintiff's conclusion that the positions of host and information clerk exceed his abilities is erroneously premised on the assumption that the reaching, handling and fingering required by such jobs necessarily involves the use of both hands. However, the DOT does not expressly contain such a requirement. See, e.g., Carey v. Apfel, 230 F.3d 131, 146 (5th Cir. 2000) (person with use of one arm could perform the jobs of cashier and ticket taker, even though jobs required fingering and handling abilities; DOT does not contain requirement of bilateral fingering and fingering); Feibusch v. Astrue, 2008 WL 583554, *5 (D. Haw. Mar. 4, 2008) (citations omitted) ("[T]he use of two arms is not necessarily required for jobs that require reaching and handling."); Diehl v. Barnhart, 357 F. Supp. 2d 804, 822 (E.D. Pa. 2005) (person with limited use of one arm could perform jobs requiring frequent reaching, handling, and fingering, and therefore there was no conflict between DOT and vocational expert's testimony to that effect).

Moreover, since the DOT does not expressly state that the jobs of host and information clerk can be performed by a claimant who lacks the use of one arm, the ALJ appropriately obtained the testimony of a vocational expert to assist in the step five determination. See Carey, 230 F.3d at (Resolution of "factual disagreement about whether a person with one arm can perform a job requiring some degree of manual dexterity and fingering . . requires expert testimony" from a vocational expert); Fuller v. Astrue, 2009 WL 4980273, *3 (C.D. Cal. Dec. 15, 2009) (Where nature of particular action required in performance of job not specified in DOT, ALJ may properly rely on testimony from vocational expert to determine whether claimant can perform job in question despite claimant's

limitations); see also SSR 85-15 ("Reaching (extending the hands and arms in any direction) and handling (seizing, holding, grasping, turning or otherwise working primarily with the whole hand or hands) are activities required in almost all jobs. Significant limitations of reaching or handling, therefore, may eliminate a large number of occupations a person could otherwise do. Varying degrees of limitations would have different effects, and the assistance of a [vocational expert] may be needed to determine the effects of the limitations."). The ALJ posed a hypothetical question to VE #2 which included all of the limitations on plaintiff's right upper extremity noted in the ALJ's residual functional capacity assessment. (AR 12-13, 350). In response, the vocational expert testified that a claimant with the stated limitations could still perform the job of host, usher or information clerk. (AR 351-54). The vocational expert's testimony, at least with respect to the jobs of host and information clerk, constitutes substantial evidence supporting the ALJ's determination that plaintiff could perform such jobs. Tackett, 180 F.3d at 1101. The Court will not second-guess the ALJ's reasonable interpretation of such evidence, even if such evidence could give rise to contrary inferences.

Accordingly, a reversal or remand on this basis is not warranted.

### C.     The ALJ Properly Considered the Medical Opinion Evidence

Plaintiff contends that reversal or remand is required because the ALJ failed to indicate whether he accepted or rejected the opinions of Dr. John S. Woodard, a neurologist and psychiatrist who conducted a consultative examination of plaintiff. (Plaintiff's Motion at 6-7). Specifically, plaintiff contends that the ALJ inadequately considered Dr. Woodard's findings that plaintiff (i) is in need of ongoing pain management; (ii) "is incapacitated for almost any kind of motor activity of his right major hand"; and (iii) "is capable of reaching, grasping, handling, fingering or feeling frequently with his left hand but not at all with his right hand." (Plaintiff's Motion at 6) (citing AR 313). The Court disagrees.
///

1. **Additional Pertinent Facts**

On September 18, 2007, Dr. Woodard conducted a neurologic evaluation of plaintiff. (AR 311-20). In his narrative report, Dr. Woodard summarized plaintiff's functional limitations as follows:

> [Plaintiff] is in need of an ongoing pain management program. He is incapacitated for almost any kind of motor activity of his right major hand. There is no incapacity for standing or walking, bending, stooping or squatting. He should be able to lift and carry 20 pounds occasionally and 10 pounds frequently since this depends entirely on his left hand. He is capable of reaching, grasping, handling, fingering or feeling frequently with his left hand but not at all with his right major hand.

(AR 313). In a medical source statement attached to Dr. Woodard's report, Dr. Woodard checked boxes indicating that plaintiff could occasionally reach overhead and in all other directions with his right hand. (AR 316).

In the decision, the ALJ thoroughly summarized all of the medical treatment and opinion evidence, as well as testimony of plaintiff and the vocational expert at the February 6, 2008, administrative hearing. (AR 13-16). With respect to the Dr. Woodard's neurologic evaluation of plaintiff, the ALJ stated as follows:

> The evidence supports that [plaintiff] could do work adapted to one armed light limitations. I have given great weight to the consultative, Board eligible neurologist and psychiatrist, John Woodard, M.D., (Exhibit 9F, pp. 1-10 [AR 311-320]). Dr. Woodard, reviewed [plaintiff's] entire medical file, interviewed [plaintiff], observed [plaintiff] and completed a neurological examination. Dr. Woodard described a fairly normal and benign examination in all areas except for [plaintiff's] right upper extremity. Upon evaluation of the right upper extremity he reported the following: [plaintiff] had

> restricted motor limitation of the right upper extremity. He had good right upper shoulder action, but all of the muscles of the right upper extremity were weak and atrophic, most severely peripherally. [Plaintiff] had no capacity for flexion of the wrist and no functional motion of the digits of the right hand except for minimal use of the thumb. Triceps strength was judged to be 2 on a scale of one to five and biceps were judged to be four out of five. Dr. Woodard diagnosed [plaintiff] with right side brachioplexus injury, secondary from a stab wound and regional pain syndrome. He concluded that [plaintiff] would be in need of [an] ongoing pain management program and gave him the following functional limitations. He thought [plaintiff] had no incapacity for sitting, standing, walking, stooping, bending, or squatting. He opined that [plaintiff] should be able to lift and or carry 20 pounds occasionally and 10 pounds frequently, depending entirely on his left hand. He concluded that [plaintiff] could reach, grasp, handle, finger, or feel frequently with his left hand but not at all with his right hand (Exhibit 9F, pp. 1-3 [AR 311-13]).
>
> Dr. Woodard's conclusions are given great weight because they are consistent with [plaintiff's] treatment records, [plaintiff's] admitted activities, and the findings of the State Agency review physicians (Exhibit 5F [AR 212-19, 220]).

(AR 14-15).

### 2. Pertinent Law

In Social Security cases, courts employ a hierarchy of deference to medical opinions depending on the nature of the services provided. Courts distinguish among the opinions of three types of physicians: those who treat the claimant ("treating physicians") and two categories of "nontreating physicians," namely

those who examine but do not treat the claimant ("examining physicians") and those who neither examine nor treat the claimant ("nonexamining physicians"). Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996) (footnote reference omitted). A treating physician's opinion is entitled to more weight than an examining physician's opinion, and an examining physician's opinion is entitled to more weight than a nonexamining physician's opinion.[5] See id. In general, the opinion of a treating physician is entitled to greater weight than that of a non-treating physician because the treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual." Morgan v. Commissioner of Social Security Administration, 169 F.3d 595, 600 (9th Cir. 1999) (citing Sprague v. Bowen, 812 F.2d 1226, 1230 (9th Cir. 1987)).

The treating physician's opinion is not, however, necessarily conclusive as to either a physical condition or the ultimate issue of disability. Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989) (citing Rodriguez v. Bowen, 876 F.2d 759, 761-62 & n.7 (9th Cir. 1989)). Where a treating physician's opinion is not contradicted by another doctor, it may be rejected only for clear and convincing reasons. Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007) (citation and internal quotations omitted). The ALJ can reject the opinion of a treating physician in favor of a conflicting opinion of another examining physician if the ALJ makes findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record. Id. (citation and internal quotations omitted); Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002) (ALJ can meet burden by setting out detailed and thorough summary of facts and conflicting clinical evidence, stating his interpretation thereof, and making findings) (citations and quotations omitted); Magallanes, 881 F.2d at 751, 755 (same; ALJ need not recite

---

[5]Cf. Le v. Astrue, 529 F.3d 1200, 1201-02 (9th Cir. 2008) (not necessary or practical to draw bright line distinguishing treating physicians from non-treating physicians; relationship is better viewed as series of points on a continuum reflecting the duration of the treatment relationship and frequency and nature of the contact) (citation omitted).

17

"magic words" to reject a treating physician opinion – court may draw specific and legitimate inferences from ALJ's opinion). "The ALJ must do more than offer his conclusions." Embrey v. Bowen, 849 F.2d 418, 421-22 (9th Cir. 1988). "He must set forth his own interpretations and explain why they, rather than the [physician's], are correct." Id. "Broad and vague" reasons for rejecting the treating physician's opinion do not suffice. McAllister v. Sullivan, 888 F.2d 599, 602 (9th Cir. 1989). These standards also apply to opinions of examining physicians. See Andrews v. Shalala, 53 F.3d 1035, 1042-44 (9th Cir. 1995).

### 3. Analysis

Plaintiff's allegation that the ALJ "failed to indicate whether he accepted or rejected" Dr. Woodard's opinions is belied by the record. As noted above, the ALJ specifically stated that he gave "great weight" to the opinions expressed in the consultative neurological examination, as they were consistent with plaintiff's treatment records, plaintiff's own testimony, and other medical opinion evidence. (AR 14, 15). In any event, the ALJ was obligated to provide an explanation only if he rejected "significant probative evidence." See Vincent v. Heckler, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (citation omitted). Plaintiff fails to identify any specific opinion expressed by Dr. Woodard that constitutes significant or probative evidence that is not already accounted for in the ALJ's residual functional capacity assessment.

The Court rejects any suggestion that the ALJ erroneously rejected particular limitations expressed in Dr. Woodard's opinions. Here, the ALJ's residual functional capacity assessment virtually mirrors the limitations identified by Dr. Woodard with one exception. The ALJ determined that plaintiff could "occasionally reach overhead and in all directions with the right hand. . . ." (AR 13). In contrast, in one portion of his report, Dr. Woodard opined that plaintiff "could reach . . . frequently with his left hand but not at all with his right hand." (AR 15) (citing AR 313) (emphasis added). Although Dr. Woodard's isolated

statement that plaintiff could reach "not at all with his right hand" suggests that plaintiff is completely unable to use his right upper extremity, the ALJ discusses additional evidence that suggests otherwise. The ALJ noted that Dr. Woodard's examination reflected that plaintiff "had good right upper shoulder action," and retained some bicep and tricep strength. (AR 15) (citing AR 312). Also, as noted above, Dr. Woodard indicated in his medical source statement that plaintiff retained the ability to occasionally reach overhead and in all other directions with his right hand. (AR 316). It was the ALJ's sole province to resolve any conflict in the medical opinion evidence. In addition, to the extent the ALJ did not expressly reject Dr. Woodard's opinions regarding plaintiff's limitations on his ability to reach with his right hand, such a conclusion can be inferred from the ALJ's thorough analysis of the pertinent facts and evidence, and detailed findings regarding residual functional capacity. Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002) (ALJ can meet burden by setting out detailed and thorough summary of facts and conflicting clinical evidence, stating his interpretation thereof, and making findings) (citations and quotations omitted); Magallanes v. Bowen, 881 F.2d 747, 751, 755 (9th Cir. 1989) (same; ALJ need not recite "magic words" to reject a treating physician opinion – court may draw specific and legitimate inferences from ALJ's opinion).

Accordingly, a reversal or remand on this basis is not warranted.

### D. The ALJ Posed a Complete Hypothetical Question to the Vocational Expert

Plaintiff contends that a reversal or remand is appropriate because the ALJ erroneously omitted from his hypothetical question posed to the vocational expert at the February 6, 2008 supplemental hearing the opinions from Dr. Woodard that plaintiff "is incapacitated for almost any kind of motor activity of his right major hand and . . . is capable of reaching, grasping, handling, fingering or feeling

///

frequently with his left hand but not at all with his right hand." (Plaintiff's Motion at 8). The Court disagrees.

A hypothetical question posed by an ALJ to a vocational expert must set out all the limitations and restrictions of the particular claimant. <u>Light</u>, 119 F.3d at 793 (citing <u>Andrews</u>, 53 F.3d at 1044); <u>Embrey v. Bowen</u>, 849 F.2d 418, 422 (9th Cir. 1988) ("Hypothetical questions posed to the vocational expert must set out *all* the limitations and restrictions of the particular claimant . . . .") (emphasis in original; citation omitted). However, an ALJ's hypothetical question need not include limitations not supported by substantial evidence in the record. <u>Osenbrock</u>, 240 F.3d at 1163-64 (citation omitted).

As noted above, the ALJ included in the hypothetical question posed to the vocational expert evidence of a complete inability to "handle, finger, feel, or push and pull with the right upper extremity or hand," which accounts for Dr. Woodard's opinion that plaintiff is precluded from "grasping, handling, fingering or feeling . . . with his right hand." (AR 313, 350). In addition, as discussed above, the ALJ properly rejected any evidence that plaintiff was completely unable to reach with his right hand. Accordingly, the ALJ properly omitted such evidence from the hypothetical question.

Therefore, a remand or reversal on this basis is not warranted.

## V.  CONCLUSION

For the foregoing reasons, the decision of the Commissioner of Social Security is affirmed.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: May 10, 2010

                                                   /s/
                               Honorable Jacqueline Chooljian
                               UNITED STATES MAGISTRATE JUDGE